FILED IN OPEN COURT

DATE: 5/12/05

TIME: 9.40 a.m.

INITIALS: ___

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CARL EDWARDS,

      Plaintiff,

vs.

TOWN OF COLLIERVILLE, TENNESSEE;
L. E. GOODWIN, CHIEF OF POLICE;
OFFICER FRANKLIN M. JONES,

      Defendants.

No. 03-2834 BA

---

## JOINT PRE-TRIAL ORDER

This action came before the Court on March 28, 2005 at 9;00 a.m. for a Pre-Trial Conference, pursuant to Rule 16 of the Federal Rules of Civil Procedure. John D. Horne, Attorney, appeared as counsel for the Plaintiff, and Edward J. McKenney, Jr., Attorney, appeared as counsel for the Defendants. The following actions were taken by the Court:

### I. JURISDICTION

This is an action for compensatory and punitive damages for deprivation of civil rights pursuant to the provisions of 42 USC §1983. The Court's jurisdiction is invoked pursuant to the provisions of 28 USC §1331, and 28 USC §1343(a)(3). Because the events giving rise to the claims asserted in this litigation, and because all Defendants reside in this judicial district, venue is proper pursuant to the provisions of 28 USC §1391(b).

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-13-05

46

## II. MOTIONS PENDING

There are five motions in limine filed by Defendants which are pending before this Honorable Court. Defendants respectfully submit that such motions should be granted. Plaintiff respectfully submits that such motions should be denied.

## III. STATUS OF PLEADINGS

The pleadings are complete.

## IV. STATUS OF DISCOVERY

Discovery is complete

## IV. GENERAL NATURE OF CLAIMS OF THE PARTIES

A.    Plaintiff's Contentions:

Plaintiff contends that on October 4, 2003, at approximately 9:25 a.m., he was driving his employer's 1995 Yellow GMC box truck westbound on Winchester Road in Shelby County, Tennessee. After the Plaintiff's vehicle had left the City Limits of Collierville, Tennessee, it was struck in the rear by a Collierville Police Cruiser, driven by Collierville Police Officer, Michael J. Pauley. The Plaintiff contends that the collision between the Collierville Police Cruiser and his truck occurred outside the City Limits of the Town of Collierville and inside the City Limits of the City of Germantown. The Plaintiff contends that Officer Pauley was driving at an unsafe rate of speed, was engaged in an unlawful pursuit of an alleged third party traffic offender, and was the proximate cause of the collision.

2

The Plaintiff's employer had been called to the scene of the collision. After inspecting the position of the vehicles and the length of the skid marks left by the Police Cruiser, the Plaintiff's employer raised questions with the Collierville Police Department concerning the fact that the collision had occurred in the City of Germantown. Following a lengthy investigation by the Collierville Police Department at the scene of the collision, the Plaintiff was permitted to leave with his passengers. No traffic citation was issued to the Plaintiff.

On October 12, 2003, Officer Pauley was issued a written reprimand by the Collierville Police Department for engaging in an unlawful pursuit that took him outside the town limits of the Town of Collierville. On October 14, 2003, the Collierville Police Department received a letter from an attorney for one of the Plaintiff's passengers, stating that the above collision had taken place in Germantown, Tennessee. On October 14, 2003, the Collierville Police Chief communicated with the Collierville Town Administrator confirming receipt of the letter from the passenger's attorney. On October 27, 2003, a certified letter from the attorney for the Plaintiff's employer was received by the Collierville Mayor and the Collierville Town Administrator stating that the above collision had occurred in the City of Germantown – not in Collierville, and that the cause of the above collision was Officer Pauley's excessive, unsafe rate of speed, and his unreasonable and dangerous chase/pursuit.

Notwithstanding the above notices, the Collierville Police Department, through its administrators and officers, issued a traffic citation to the Plaintiff for an unlawful U-turn that would have occurred in the City of Germantown. A Collierville Police Officer telephoned the Plaintiff and directed him to come to Collierville to pick up the traffic citation. When the Plaintiff did not return to the Town of Collierville to accept the traffic citation, the Collierville Police Department, following its established customs, policies, and procedures, caused an

affidavit and request for an arrest warrant to be presented to the Judge of the Collierville Municipal Court on November 6, 2003. The affidavit presented to the Collierville Municipal Judge indicated that the alleged traffic violation, which served as the basis for the traffic citation issued to the Plaintiff, had occurred in the City of Collierville, notwithstanding knowledge of the Collierville Police Department and the Town of Collierville to the contrary.

On November 6, 2003, as a result of the request by the Collierville Police Department for an arrest warrant, pursuant to the customs, policies, and procedures established by the Town of Collierville, an arrest warrant was issued by the Collierville Municipal Court that day. Pursuant to customs, policies, and procedures of the Collierville Police Department, that arrest warrant was then immediately transmitted to the Shelby County Sheriff's Department's Fugitive Squad. At 10:55 p.m. on November 6, 2003, Deputies with the Shelby County Sheriff's Department's Fugitive Squad made a physical arrest of the Plaintiff in his home in North Memphis. The Shelby County Sheriff's Deputies then transported the Plaintiff to a parking lot at the corner of Poplar and Byhalia in the Town of Collierville, where physical custody of the Plaintiff was transferred to a waiting Collierville Police Officer. That Collierville Police Officer then transported the Plaintiff to the Collierville Jail, where he was confined. The following morning, the Plaintiff's employer made bond for him, and he was released.

The traffic citation and the charges which were the basis for the arrest warrant were nolle prossed following the Plaintiff's filing of this lawsuit; nevertheless, as a result of his wrongful arrest and confinement, the Plaintiff was deprived of his civil rights. As a direct and proximate result of the actions of the Town of Collierville and its officers, acting under the color of law, the Plaintiff was also embarrassed, humiliated, sustained emotional stress, and incurred out of pocket expenses. Furthermore, the actions of the Town of Collierville and the Collierville Police

4

Department, under all the circumstances were so wanton and malicious as to entitle the Plaintiff to punitive as well as compensatory damages.

B.    Defendants' Contentions:

Defendants deny Plaintiff's allegations and deny that he is entitled to relief. Plaintiff failed to maintain a proper lookout and keep the moving van he was driving under control, crossing from the middle lane into the inside lane while attempting to make a u-turn despite observing the police vehicle being driven by Collierville police officer, Michael Pauley, approaching in the inside lane at what Plaintiff observed to be a high rate of speed. Although Officer Pauley attempted to avoid striking the moving van, he struck the left rear corner of the van as Plaintiff was attempting to make a u-turn.

The accident took place in the median in front of the MLGW Substation on Winchester Road. The Collierville Utilities Booster Pump is immediately east of the MLGW Substation. Although both the MLGW Substation and the Collierville Utilities Booster Pump are located between the Welcome to Germantown and the Welcome to Collierville signs, it is undisputed that both are located with the Collierville town limits as a result of annexation in July, 2000. There is nothing on Winchester Road to mark the precise legal boundary line between the City of Germantown and the Town of Collierville on Winchester Road for police and fire department employees whose jobs require them to work in this area, and a simple review of a map does not disclose the precise legal boundary line across Winchester Road. From the time of annexation until the present lawsuit was filed, both the Town of Collierville and the City of Germantown recognized the boundary line between those two cities to be the power lines crossing Winchester Road.

The accident involving the vehicle driven by Plaintiff and the vehicle driven by Officer Pauley took place approximately 200 feet east of the power lines, a location considered at the time by both the Collierville and Germantown police departments as being within the Collierville town limits. The Collierville Town Engineer, Houston Daugherty, confirmed for the Collierville Police Department on October 6, 2003 that the power lines crossing over Winchester Road was considered to be the eastern town boundary of Collierville.

Plaintiff and the passengers in the moving van told the investigating officers that Plaintiff was attempting to make a u-turn at the time of the accident. The evidence at the scene of the accident was consistent with the statement of Plaintiff and his passengers that Plaintiff was in the process of making a u-turn at the time of the accident. However, since Officer Pauley had been transported by ambulance to the hospital, the investigating officers were not able to conclude their investigation at the scene, thus no tickets were issued at the scene and Plaintiff was allowed to leave the scene pending conclusion of the investigation. Officer Pauley was subsequently interviewed and a decision was made that tickets should be issued to both drivers. Officer Pauley was issued a ticket for failure to exercise caution and Plaintiff was issued a ticket for making a u-turn.

Tennessee law requires that a driver who is issued a traffic ticket sign the ticket. Refusal to do so requires that the driver be arrested. Officer Pauley signed his ticket. On October 6, 2003, Plaintiff was called by Collierville police officer Bryan Clark, advised of his ticket, and told that he needed to come to the Collierville Police Department to sign the ticket. Plaintiff did not question the ticket, instead advising Officer Clark that he would come in the following day to sign the ticket. When Plaintiff failed to come in to sign the ticket the following day, Officer Franklin Jones telephoned him on October 8, 2003, again advised him about the ticket and said

that he was required to come to the Collierville Police Department to sign the ticket. Once again, Plaintiff never questioned the ticket. Consistent with Tennessee law, Officer Jones advised Plaintiff that his failure to come in and sign the ticket would result in his arrest. Unfortunately for Plaintiff and unknown to the Collierville Police Department, Plaintiff's employer, Colquett Van Dyke, advised him not to go to the Collierville Police Department to sign the ticket. Plaintiff never contacted the Collierville Police Department after October 8, 2003 and made no effort whatsoever after that date to come to the Collierville Police Department to sign the ticket despite being aware that his failure to sign the ticket would result in his arrest.

After giving Plaintiff approximately four weeks to come in to the Collierville Police Department to sign the ticket and confirming that Plaintiff had failed to do so, consistent with Tennessee law, Officer Jones sought an arrest warrant for Plaintiff.  Consistent with Tennessee law, a warrant was issued by Collierville City Judge, William Craig Hall, for Plaintiff's arrest. Chief Goodwin had no involvement in the process of seeking or obtaining the arrest warrant. As warrants are entered into a computer database available to other local law enforcement agencies, two Shelby County deputy sheriffs, John Thompson and George Maxwell, who were attempting to make a felony arrest which would take them in vicinity of Collierville area, retrieved the warrant information regarding Plaintiff and arrested him on November 6, 2003.

Plaintiff would not have been arrested had he simply signed the ticket as he had agreed to do.  Assuming Plaintiff experienced car trouble on October 7, 2003, the Collierville Police Department had no way to know that he could not get his car running for an entire month. Plaintiff never told any Collierville police officer that there was no way for him to get to the Police Department to sign the citation. Plaintiff made no attempt to ask anyone to drive him to

the Collierville Police Department. He made no attempt to borrow a vehicle in order that he could come in to sign the citation.

Plaintiff would not have been incarcerated had he simply paid the $94.00 ticket. When Plaintiff said that he did not have $94 at the time of his arrest, he was allowed to call someone who could bring the money to the Collierville Police Department for Plaintiff to pay the ticket. Plaintiff called Mr. Van Dyke to bring the $94 and would not have been incarcerated had Mr. Van Dyke simply come at that time to the Police Department and loan the money to Plaintiff, but Mr. Van Dyke was unwilling to do so. When Mr. Van Dyke finally came to the Police Department the following morning, Plaintiff was promptly released once the ticket was paid. At no time while he was at the Collierville Police Department did Plaintiff ever question the ticket or explain why he had never come to the Police Department to sign the ticket during the preceding month.

As of the date he sought the arrest warrant, Officer Jones reasonably believed that the accident scene was located in the Town of Collierville. A reasonable officer under similar circumstances would have believed that there was probable cause to seek an arrest warrant from the Collierville City Court Judge based upon Plaintiff's refusal to sign the ticket under the circumstances presented in this case. Chief Goodwin was not involved in the decision to seek an arrest warrant or the issuance of the warrant and did nothing to violate Plaintiff's federal rights. When this lawsuit was first filed, Chief Goodwin reasonably believed that the accident scene was located in the Town of Collierville. A reasonable officer under similar circumstances would not have believed that anything had been done by anyone in the Collierville Police Department to violate Plaintiff's federal rights.

It was not until officials from the Collierville Planning Department subsequently visited the accident scene and did an additional investigation that it was learned that, although the Memphis Light Gas & Water Substation in front of which the accident occurred was located in Collierville, the median a few feet in front of the Substation was actually located in Germantown. It is undisputed that, immediately upon being advised by officials in the Collierville Planning Department that the accident scene was in Germantown, the Collierville Police Department immediately requested that the ticket which had been issued to Plaintiff be dismissed and the charge against him be expunged. This was done and Plaintiff was refunded the cost of the ticket.

Plaintiff can state no cause of action against Officer Franklin Jones, as he had probable cause to seek an arrest warrant when Plaintiff failed to sign the ticket, his actions were taken in good faith and were reasonable based upon the circumstances presented and a judge determined that there was probable cause to arrest Plaintiff. Furthermore, any action against Officer Jones is barred by the doctrine of qualified immunity. Plaintiff can state no cause of action against Chief Lawrence Goodwin as he took no action to violate Plaintiff's rights. Similarly, any action against Chief Goodwin is barred by the doctrine of qualified immunity. Finally, Plaintiff can state no cause of action against the Town of Collierville as he was not injured as the result of any municipal custom or policy.

## VI.  STIPULATED FACTS

The following facts have been stipulated by counsel at the Pre-Trial Conference.

1.     The Town of Collierville is a city in the eastern portion of Shelby County, Tennessee, incorporated pursuant to the Laws of the State of Tennessee.

9

2.     At all times material to this litigation, the Defendant, L. E. Goodwin, was employed by the Town of Collierville as its Chief of Police.

3.     At all times material to this litigation, the Defendants, Officer Franklin M. Jones, and Patrolman Michael J. Pauley, Sr., were employed by the Town of Collierville as law enforcement/police officers.

4.     On October 4, 2003, Officer Michael Pauley was authorized by the Collierville Police Department to operate one of its police cruisers.

5.     On Saturday, October 4, 2003, there was a collision involving a Collierville Police Cruiser driven by Officer Pauley and a moving truck driven by the Plaintiff.

6.     At the time of the collision, the Plaintiff's vehicle was proceeding westbound on Winchester Road, approximately one-half mile west of its intersection of Houston Levee Road.

7.     At the time of the collision, Officer Pauley was proceeding westbound on Winchester Road responding to a call regarding of a reckless driver proceeding westbound on Highway 385.

8.     At the time of the collision, Officer Pauley was operating his Police Cruiser at a high rate of speed with only his rear emergency lights operating.

9.     The section of Winchester Road upon which the Plaintiff and Officer Pauley were traveling had three dedicated lanes going westbound, with a median separating the three lanes from the three lanes of eastbound traffic.

10.     At the time of the collision, the traffic on Winchester was light and the weather was clear.

11.     On November 6, 2003, an Affidavit was prepared by Officer Jones and filed with the Collierville Municipal Court, seeking an arrest warrant for the Plaintiff.

12.     On November 6, 2003, Officer Jones appeared before the Judge of the Collierville Municipal Court and confirmed the facts set forth in his Affidavit.

## IV. CONTESTED ISSUES OF FACT

1.      Whether the location of the collision was outside the Town Limits of the Town of Collierville and inside the City Limits of the City of Germantown?

2.      Whether Officer Pauley's Collierville Police Cruiser left 216 feet of skid marks prior to the point of its impact with the Plaintiff's truck?

3.      Whether at all times material to this litigation, the Town of Collierville maintained numerous maps that depicted the Collierville Town Limits, and in particular, the intersection of the Town Limits with Winchester Road?

4.      Whether on October 12, 2003, the Collierville Police Department issued a written reprimand to Officer Pauley, concluding that he had been traveling at a minimum speed of 67 MPH, and that he had been engaged in an unlawful pursuit that took him outside the Town Limits of the Town of Collierville?

5.      Whether on October 14, 2003, the Collierville Police Department received a letter dated October 10, 2003 from an attorney for one of the Plaintiff's passengers, alleging that the collision took place in Germantown, Tennessee?

6.      Whether on October 15, 2003, TML, acting on behalf of the Town of Collierville, wrote the Plaintiff stating he was responsible for the above collision?

7.      Whether on October 14, 2003, the Collierville Police Chief communicated with the Collierville Town Administrator, confirming Officer Pauley's violation of emergency

response regulations and confirming receipt of the October 10, 2003 letter from the attorney for the Plaintiff's passenger?

8.     Whether on October 27, 2003, the Town of Collierville received written correspondence from counsel for the Plaintiff's employer asserting that the cause of the October 4, 2003 collision was Officer Pauley's excessive speed and his unreasonable and dangerous police pursuit?

9.     Whether several days after the October 4, 2003 collision, and after the Plaintiff had been permitted to leave the scene of the collision, the Collierville Police Department issued a traffic citation to the Plaintiff, alleging an unlawful U-turn?

10.     Whether some time later, an officer with the Collierville Police Department telephoned the Plaintiff and directed him to return to the Town of Collierville to receive the traffic citation issued as a result of the October 4, 2003 collision?

11.     Whether on November 3, 2003, after the Plaintiff had not come to Collierville to pick up the traffic citation, a memorandum was issued from the Office of the Collierville Police Chief, directing that the Plaintiff be physically arrested?

12.     Whether on November 6, 2003, after the presentation by Officer Jones of his affidavit, a warrant for the physical arrest of the Plaintiff was issued by the Judge of the Collierville Municipal Court?

13.     Whether following the issuance of the arrest warrant on November 6, 2003, the Collierville Police Department caused the arrest warrant to be transmitted to the Shelby County Sheriff's Fugitive Squad?

14.     Whether on November 6, 2003, at approximately 10:55 p.m., Deputies with the Shelby County Sheriff's Department made a physical arrest of the Plaintiff at his home in North Memphis?

15.     Whether while in the Plaintiff's home preparing to execute the arrest warrant, one of the Shelby County Sheriff Deputies telephoned the Collierville Police Department to verify that the Collierville Police Department still wanted the Plaintiff to be arrested?

16.     Whether after the Collierville Police Department verified that the Plaintiff was to be arrested, the Sheriff's Department Deputies executed the arrest warrant and placed the Plaintiff under physical arrest?

17.     Whether the Shelby County Sheriff's Deputies then transported the Plaintiff from his home to a parking lot at the corner of Poplar and Byhalia in the Town of Collierville?

18.     Whether upon arrival at that parking lot, physical custody of the Plaintiff was turned over by the Shelby County Sheriff's Deputies to a Collierville Police Officer.?

19.     Whether, thereafter, the Collierville Police Officer took the Plaintiff to the Collierville Jail at approximately 11:20 p.m. on November 6, 2003.?

20.     Whether the Plaintiff was released from the Collierville Jail at 10:37 a.m. on November 7, 2003, after his employer posted a $94.00 bond?

21.     Whether the traffic citation issued to the Plaintiff from the Collierville Police Department, as well as the charges contained in the Affidavit for the arrest warrant, were nolle prossed by the Collierville Police Department following the filing of this lawsuit?

22.     Whether the Defendants were justified in issuing a traffic citation to the Plaintiff?

23.     Whether Defendant, Franklin Jones, reasonably believed that the accident occurred in Collierville, Tennessee?

13

24.     Whether any mistake as to the accident scene being within the Collierville town limits was anything more than mere negligence?

25.     Whether Defendant, Franklin Jones, reasonably believed that there was probable cause to seek a warrant for the arrest of Plaintiff after he refused to sign the citation which had been issued to him as a result of the October 4, 2003 accident?

26.     Whether Defendant, Franklin Jones, reasonably believed that there was probable cause to believe that Plaintiff made an unlawful u-turn, in violation of Collierville Ordinance No. 9-305.

27.     Whether Plaintiff moved his vehicle from the lane of traffic in which he had been traveling before ascertaining that such movement could be made with safety?

28.     Whether Plaintiff made a left turn at a time and place and in such a manner that it could not be made with reasonable safety?

29.     Whether Plaintiff failed to first look and see that he could make a turn in safety?

30.     Whether Defendant, Lawrence Goodwin, participated in, directed, or was aware that an arrest warrant was being sought for Plaintiff prior to the issuance of such warrant?

31.     Whether Defendant, Lawrence Goodwin, participated in, directed, or was aware that an arrest warrant was issued for Plaintiff prior to the time of arrest?

32.     Assuming that Plaintiff was deprived of any federal right, whether said deprivation took place at the direction of Defendant, Lawrence Goodwin, or with his knowledge, acquiescence or consent?

33.     Whether Defendant, Lawrence Goodwin, grossly disregarded his duty to oversee Defendant, Franklin Jones, and that a reasonable person in the Chief's position would have known that his dereliction of duty probably would cause a deprivation of rights.

34.     Whether Defendants, Franklin Jones and Lawrence Goodwin, believed in good faith that their actions were reasonable?

35.     Whether the actions of Defendants, Franklin Jones and Lawrence Goodwin, were reasonable, in light of the facts and circumstances then and there existing?

36.     Whether Defendants denied the Plaintiff his federally protected rights?

37.     Whether Plaintiff sustained any injuries as a proximate result of any acts of Defendants.

38.     Whether the Plaintiff is entitled to recover compensatory damages against the Defendants?

39.     Whether the Plaintiff is entitled to recover punitive damages against Defendants, Franklin Jones and Lawrence Goodwin?


## VIII.  CONTESTED ISSUES OF LAW

1.     Whether the Defendants were acting under the color of law in conjunction with the arrest of the Plaintiff on November 6, 2003?

2.     Whether Plaintiff can state a cause of action against Defendant, Franklin Jones, pursuant to 42 U.S.C §1983?

3.     Whether Plaintiff can stated a cause of action against Defendant, Lawrence Goodwin, pursuant to 42 U.S.C. §1983?

4.     Whether Plaintiff can stated a cause of action against Defendant, Town of Collierville, pursuant to 42 U.S.C. §1983?

5.     Whether the actions of Defendants, Franklin Jones and Lawrence Goodwin are protected by the Doctrine of Qualified Immunity?

6.     Whether Defendant, Franklin Jones had a reasonable basis to believe that there was probable cause to seek an arrest warrant for Plaintiff?

7.     Whether Defendant, Franklin Jones, reasonably believed that there was probable cause to seek a warrant for the arrest of Plaintiff after he refused to sign the citation which had been issued to him as a result of the October 4, 2003 accident?

8.     Whether Defendant, Franklin Jones, reasonably believed that there was probable cause to believe that Plaintiff made an unlawful u-turn, in violation of Collierville Ordinance No. 9-305 prior to codification?

9.     Whether there was reasonable cause to believe that Plaintiff violated the provisions of Tenn. Code Ann. §55-8-123 (1), which provides that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

10.     Whether there was reasonable cause to believe that Plaintiff violated the provisions of Tenn. Code Ann. §55-8-142 (a), which provides that no person shall . . ."turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety?"

11.     Whether there was reasonable cause to believe that Plaintiff violated the provisions of Tenn. Code Ann. §55-8-143 (a), which provides that "every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety?"

12.     Whether the fact that the accident scene was subsequently determined to be barely outside of the Collierville town limits necessarily makes Plaintiff's arrest constitutionally invalid?

13.     Whether, assuming that Plaintiff could not be charged with a violation of the Collierville u-turn Ordinance, he was necessarily deprived of any constitutional right, in view of

the fact that his conduct violated the provisions of Tenn. Code Ann. §55-8-123(1), 55-8-142(a) and 55-8-143(a) and provided probable cause for issuance of the arrest warrant?

14.     Whether Plaintiff's constitutional rights were violated where he chose not to acknowledge receipt of the ticket by signing it as required by Tennessee law?

15.     Whether, assuming that Plaintiff's arrest violated Tennessee law, it necessarily follows that his constitutional rights were violated?

16.     What is the proper measure of damages, if any?

Were the customs, policies, and procedure followed by the Town Collierville and its Police Department, which are the subject of this litigation, properly administered under the circumstances of the case?

## IX.  EXHIBITS

A.     Plaintiff's Exhibits:

(1)     Aerial photograph of area of collision obtained by Plaintiff's employer from Town of Collierville. **[DEFENDANTS OBJECT TO THIS EXHIBIT]**

(2)     Aerial map maintained by Town of Collierville.

(3)     Page 205 from Handy Map map book. **[DEFENDANTS OBJECT TO THIS EXHIBIT]**

(4)     Collision Scene Field Sketch and calculations prepared by Collierville Police Department.

(5)     Photographs of Collierville Police Cruiser and skid marks.

(6)     Photos of Plaintiff's truck.

(7)     Photographs of sign to "Welcome to Collierville."

(8)     October 12, 2003 written reprimand issued by Collierville Police Department to Officer Pauley.

(9)     On October 10, 2003, letter from attorney for Plaintiff's passenger to Collierville Police Department. **[DEFENDANTS OBJECT TO THIS EXHIBIT AND HAVE FILED A MOTION IN LIMINE].**

(10)    October 14, 2003 email from Chief Goodwin to Town Administrator, confirming written reprimand and receipt of letter from attorney for passenger.

(11)    October 15, 2003 letter from TML to Carl Edwards. **[DEFENDANTS OBJECT TO THIS EXHIBIT AND HAVE FILED A MOTION IN LIMINE].**

(12)    October 24, 2003 certified letter from attorney for Country Club Moving to Collierville Mayor and Town Administrator. **[DEFENDANTS OBJECT TO THIS EXHIBIT AND HAVE FILED A MOTION IN LIMINE].**

(13)    Return receipt from United States Postal Service dated 10/27/03, confirming receipt of 10/24/03 letter by Town Administrator. **[DEFENDANTS OBJECT TO THIS EXHIBIT AND HAVE FILED A MOTION IN LIMINE].**

(14)    Traffic citation issued by Officer Jones to Plaintiff.

(15)    November 3, 2003 Memorandum from Collierville Police Chief directing physical arrest of Plaintiff. **[DEFENDANTS OBJECT TO THIS EXHIBIT AND HAVE FILED A MOTION IN LIMINE].**

(16)    Affidavit of Complaint executed by Officer Jones on 11/6/03.

(17)    Town of Collierville Warrant for arrest of Plaintiff dated 11/6/03.

(18)    Shelby County Sheriff's Department daily activity log of Fugitive Division dated 11/6/03, confirming time of arrest of Plaintiff.

(19)    Collierville Police records of arrest of Plaintiff.

(20)    November 11, 2003 letter from Collierville Town Court to the Plaintiff, directing Court appearance.

(21)    November 21, 2003 Collierville Police Department memo from Chief Goodwin directing nolle prosse.

18

(22)    November 21, 2003 letter from Collierville Municipal Court confirming nolle prosse.

(23)    Collierville City Court records of nolle prosse dated 12/11/03.

(24)    Town of Collierville refund check dated November 25, 2003 to Plaintiff.

B.    Defendants' Exhibits:

(1)    Complaint (with any items excluded being redacted) **[Plaintiff will object to admission of Deposition Testimony as an Exhibit].**

(2)    Deposition of Plaintiff.

(3)    October 12, 2003 written reprimand

(4)    October 14, 2003 e-mail from Chief Goodwin to James Lewellen

(5)    Accident report, including notes, field sketches, diagrams and calculations

(6)    Photographs taken at accident scene.

(7)    Ticket issued to Plaintiff

(8)    Ticket issued to Officer Pauley

(9)    Affidavit of Complaint

(10)    Warrant

(11)    Judgment

(12)    Order of Expungement

(13)    Memo seeking dismissal of ticket

(14)    Court Appearance Bond

(15)    11/3/03 Tracking memo

(16)    E-mail from Lt. Albonetti to Houston Daughtery

(17)   Deposition of Michael Pauley (if not available to testify) **[Plaintiff will object to admission of Deposition Testimony as an Exhibit]**

(18)   Deposition of Colquett Van Dyke **[Plaintiff will object to admission of Deposition Testimony as an Exhibit]**

(19)   Deposition of Billy Ruffin **[Plaintiff will object to admission of Deposition Testimony as an Exhibit]**

(20)   Deposition of Michael Ruffin **[Plaintiff will object to admission of Deposition Testimony as an Exhibit]**

(21)   Tenn. Code Ann. §55-8-123 (1)

(22)   Tenn. Code Ann. §55-8-142 (a)

(23)   Tenn. Code Ann. §55-8-143 (a)

(24)   Collierville Ordinance No. 9-305, now codified as §71.49

(25)   Collierville Ordinance No. 9-205, now codified as §71.34

(26)   Tenn. Code Ann. §40-7-109.

(27)   Tenn. Code Ann. §7-63-101 through 7-63-106.

(28)   Tenn. Code Ann. §40-7-118

(29)   Tenn. Code Ann §40-7-120

The authenticity and admissibility of the foregoing exhibits are stipulated, except where an objection is made. Either party may examine or cross-examine with respect to any exhibit admitted by the Court.

<u>X.  WITNESSES</u>

A.    <u>Plaintiff's Witnesses – Will Call</u>

    (1)    Carl Edwards

    (2)    Colquett Van Dyke


<u>Plaintiff's Witnesses – May Call</u>

    (1)    Michael Ruffin

    (2)    Billy J. Ruffin

    (3)    George J. Maxwell

    (4)    John C. Thompson


<u>Deposition Testimony – May call</u> **Defendants will object to the admission of deposition testimony as exhibits.**

    (1)    James H. Lewellen

    (2)    Chief L. E. Goodwin

    (3)    Franklin Jones

    (4)    Brian Clark

    (5)    Michael Pauley

    (6)    Teresa Dowdy

    (7)    R. V. Metheney


B.    <u>Defendants' Witnesses</u>

The following witnesses will be called by Defendants:

    (1)    Officer Franklin M. Jones

    (2)    Chief Lawrence Goodwin

(3)      Houston Daugherty

(4)      Harvey Matheny

(5)      Bryan Clark

(6)      Lt. Michael Albonetti

(7)      Deputy Chief Tom Lott

(8)      Lt. Jay Ford

(9)      Plaintiff

(10)     Colquett Van Dyke

(11)     Mark King


The following witnesses may be called by Defendants:

(1)       Michael Pauley (either live or by deposition, if unavailable)

(2)      James Lewellen

(3)      Dave Hamric

(4)      Jeff Abeln

(5)      Wes Green

(6)      Steve McDaniel

(7)      William Craig Hall

(8)      Nicole Davidson

(9)      Rae Dowdy

(10)     Michelle Vickers

11)     George Maxwell

12)     John Thompson

Witnesses not listed will not be permitted to testify on the trial except by further order of

the Court, but this restriction shall not reply to rebuttal  witnesses.


## XI  OTHER INFORMATION

Unless  modified  or  supplemented  by  the  Court,  this  Order  shall  be  binding  on  both

parties on the trial.

22

This Pre-Trial Order shall supplant the pleadings.

The Court shall reserve for its subsequent ruling Plaintiffs' request for attorney fees and reimbursement for expenses.

### XII.  TRIAL INFORMATION

This action is scheduled for Jury Trial to commence On April 4, 2005 at 9:30 a.m.

A.    <u>Estimated Length of Trial:</u>

      Four days.

B.    <u>Possibility Of Settlement Prior To Trial</u>

      Poor.

J. DANIEL BREEN
United States District Court Judge

Date: _May 12th, 2005_

23

APPROVED:


John D. Horne (#4815)
Attorney for Plaintiff
6060 Poplar Ave., Suite 295
Memphis, TN 38119
(901)685-9222 (Phone)
(901)869-0912 (Fax)


Edward J. McKenney, Jr. (#5380)
Attorney for Defendants
One Commerce Square, Ste. 2700
Memphis, TN 38103-2156
(901)526-1455 (Phone)
(901)526-4084 (Fax)

24

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 46 in case 2:03-CV-02834 was distributed by fax, mail, or direct printing on May 13, 2005 to the parties listed.

---

John D. Horne
THE WINCHESTER LAW FIRM
6060 Poplar Avenue
Ste. 295
Memphis, TN 38119--278

Edward J. McKenney
HARRIS SHELTON HANOVER WALSH, PLLC.
One Commerce Square
Ste. 2700
Memphis, TN 38103--255

Honorable J. Breen
US DISTRICT COURT